**Douglas A. TURPIN Plaintiff–Appellant,**

v.

**James E. MUELLER Defendant–Appellee.**

No. 00–4585.

United States Court of Appeals, Sixth Circuit.

May 17, 2002.

Before MARTIN, Chief Circuit Judge; COLE, Circuit Judge; and, SHARP, District Judge.*

PER CURIAM.

In this section 1983 action, Plaintiff Douglas A. Turpin appeals summary judg-

---

* The Honorable G. Kendall Sharp, United States District Court Judge for the Middle District of Florida, sitting by designation.

ment entered in favor of defendant James E. Mueller in which Turpin alleges that Mueller violated his Fourth Amendment rights by using excessive force when arresting him. For the following reasons, we AFFIRM the district court.

## I.

The following facts are undisputed by the parties. On November 18, 1996, Turpin and his girlfriend, Teresa Fields, went to Frank Cox's home for the purpose of executing a false robbery, supposedly with Cox's full consent. While at Cox's home, they took a number of guns, video games, and compact discs, and left in Cox's truck. Soon thereafter, a sheriff in a patrol car started chasing the truck. Turpin pulled the truck to the side of the road, and began running from the sheriff. The sheriff quickly caught Fields, but Turpin escaped on foot.

Turpin successfully eluded police officers, search dogs, and a police helicopter until the next day. The next morning, Turpin spotted a police helicopter circling overhead. He started running away from the helicopter towards a bridge.

The following facts are in dispute. Turpin alleges that while he was running towards the bridge, suddenly several police officers ambushed him, and he immediately surrendered. Turpin claims that, as he was attempting to surrender, deputy sheriff James E. Mueller shot him twice, once in the face, and once in the right arm. He claims that Mueller did not identify himself as a police officer, and did not give a warning before shooting him. He submits that Mueller was positioned such that Turpin could not see that he was wearing a police uniform. Turpin also alleges that after he was wounded, Mueller shot him a third time.

Mueller tells a different story. Mueller says that he was hiding behind a tree, dressed in his sheriff uniform, when he saw Turpin running towards the bridge. As Turpin approached the tree, Mueller emerged from behind the tree, and repeatedly ordered plaintiff, by name, while facing him, to stop and fall to the ground. Turpin did not comply, but raised his hand to the middle of his body, and shot at Mueller with a shotgun.

In response, Mueller fired two shots at Turpin. Turpin's arm continued up and out toward the center of his body, and Mueller fired the third shot. Then Turpin fell to the ground and Mueller ran to his side where he saw a small handgun, a Springfield Armory .45 caliber semiautomatic pistol. Turpin does not claim that the gun was not his. Mueller immediately called for medical attention. After Turpin was arrested, officers removed a second hand gun from Turpin's pocket, a Colt Mustang IV .380 caliber semiautomatic pistol.

On January 16, 1997, the State of Ohio's Bureau of Criminal Identification and Investigation conducted several post-shooting tests on the two principal weapons found on, and near, Turpin. On March 19, Turpin pleaded guilty to felonious assault with a gun. He also pleaded guilty to charges of robbery and grand theft of a motor vehicle.

As a result of the incident described above, Turpin filed a section 1983 action against Mueller, in his individual capacity, claiming that he used excessive force in apprehending him in violation of the Fourth Amendment's prohibition against unreasonable seizures. Mueller filed a motion for summary judgment. The magistrate judge's report and recommendation advised that Mueller's motion for summary judgment be denied. The district court reviewed the magistrate judge's report and recommendation and Mueller's motion

for summary judgment, and decided to grant Mueller's motion.

## II.

On an appeal from a motion for summary judgment, this court reviews the district court's opinion *de novo,* reviewing the evidence in the light most favorable to the non-moving party. *Grand Rapids Plastics, Inc. v. Lakian,* 188 F.3d 401, 405 (6th Cir.1999). We decide whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If there is a "genuine issue of material fact" then summary judgment should be denied. *Id.* "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.,* 926 F.2d 559, 561 (6th Cir.1991).

## III.

In this section 1983 action, we are asked to decide whether Mueller used excessive force in apprehending Turpin in violation of the Fourth Amendment's prohibition against unreasonable seizures.

An officer's seizure of a suspect is unreasonable if he uses excessive force during an arrest or investigatory stop. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In determining whether the force used to effect a seizure is reasonable, we balance "'the nature of the quality of the intrusion on the individual's Fourth Amendment in-terests against the countervailing government interest at stake.'" *Id.* at 396 (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). We assess whether the officer was "objectively reasonable," analyzing the circumstances "from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight." *Id.* A number of factors enter into our analysis including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Pleasant v. Zamieski,* 895 F.2d 272, 276 (6th Cir.1990) (quoting *Graham,* 490 U.S at 396). We must keep in mind that the officer is often forced to make split-second decisions in extremely dangerous situations. *Graham,* 490 U.S at 396–97.

As to the use of deadly force, the Supreme Court concluded in *Tennessee v. Garner,* 471 U.S. 1, 11–12, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) that its use is reasonable to apprehend a fleeing suspect when (1) the police officer has probable cause to believe the suspect poses a threat of serious physical harm; (2) deadly force is necessary to prevent escape, and; (3) if feasible, some warning has been given.

Viewing the facts in the light most favorable to Turpin, Mueller used reasonable force to apprehend him. Under the test set out in *Garner,* the first question is whether Mueller had probable cause to believe he was in danger. *Id.* at 11. On the morning of November 19, Mueller was sent to apprehend a suspect to an aggravated robbery, who had stolen a number of firearms. When Mueller encountered him, Turpin pulled, or seemed to pull, a gun from his waistband. Then, Turpin fired, or seemed to fire, the gun at Mueller. Therefore, Mueller undoubtedly had probable cause to believe he was in danger.

The second question under *Garner* is whether Mueller reasonably believed the use of force was necessary to apprehend the suspect. *Id.* Turpin admits that he was running away from the police helicopter. Also, Turpin had eluded the police for approximately twelve hours, and was still fleeing when Mueller encountered him. Because Turpin quite obviously was not surrendering, Mueller reasonably believed the use of force was necessary to apprehend him.

Third, some warning must be given where feasible. *Id.* at 12. Turpin claims Mueller did not give a warning, and Turpin could not see that he was in his uniform. Even if this is true, because Mueller reasonably believed that he was in imminent danger, giving a warning would not have been feasible. *See Boyd v. Baeppler,* 215 F.3d 594, 601 (6th Cir.2000). Furthermore, it is undisputed that Turpin was running from a police helicopter that was circling above him. The helicopter provided a sufficient warning to Turpin that the police were after him. *See id.* For the foregoing reasons, Mueller satisfied his burden of showing the absence of a genuine issue of material fact as to an essential element of Turpin's case.

Then the burden shifts to Turpin to show there is a genuine issue for trial. Turpin offers no corroborating evidence to his story. We have held that once the moving party shows sufficient evidence to support a summary judgment motion, the non-movant may not rely solely on his uncorroborated assertions. *Goins,* 926 F.2d at 561. In particular, Turpin offers no explanation as to why, shortly after the incident, he pleaded guilty to felonious assault with a gun.

## IV.

Based on these undisputed facts, we conclude that the seizure was reasonable, and thus there was no constitutional violation, and no section 1983 claim. Summary judgment was properly granted. Thus, we AFFIRM the district court.