**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2005-CA-00754-SCT**

*FLOYD WILLIAMS, JR.*

*v.*

*DONALD BENNETT, INDIVIDUALLY AND d/b/a KROSSTOWN TRADE & PAWN SHOP*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/27/2004 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DANIEL M. CZAMANSKE, JR. |
| ATTORNEYS FOR APPELLEES: | WILLIAM O. LUCKETT, JR. |
| | THERESA L. CUMMINGS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 01/19/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    This case is before us on appeal from a final judgment entered by the Circuit Court of Coahoma County granting summary judgment for Donald Bennett and against Floyd Williams, Jr.  Finding the trial court properly granted summary judgment, we affirm.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.    This cause of action, grounded in products liability, stems from a gunshot wound suffered by Floyd Williams when his Lorcin .380 handgun accidentally fell to the ground from

the door of his vehicle and discharged, striking his right leg. Notably, at the time of the accident the safety on the handgun was off and in the "fire" position.

¶3. While the weapon's chain of title is somewhat unclear from the pleadings, the record does indicate that on August 9, 2001, the Lorcin handgun was purchased by Krosstown Trade & Pawn Shop ("Krosstown"), owned and operated by Donald Bennett, from Stephanie Johnson, a local resident of Coahoma County. The record reveals that on January 15, 2002, Bennett, through Krosstown, sold the Lorcin handgun to Alex Donte Crumb. However, it is unclear from the pleadings how the Lorcin handgun came into Williams' possession.

¶4. Williams filed suit on March 1, 2004, and named "Donald Bennett, Individually, and d/b/a Krosstown Trade & Pawn Shop, and Euclid Avenue Sales, Inc." as defendants.[1] Specifically, Williams alleged the defendants were strictly liable for his injuries and claimed the Lorcin handgun was designed, manufactured and distributed in a defective condition and was unreasonably dangerous for its intended use. Additionally, and in the alternative, Williams alleged the defendants were negligent for failing to provide adequate instruction as to the proper use of, and dangers associated with, the handgun, and that the defendants failed to distribute a handgun which would not discharge when dropped.

¶5. Bennett filed a motion for summary judgment on July 26, 2004, and responded to Williams' claims by asserting there was no privity between the parties; that he was an innocent

---

[1]Bennett and Krosstown, unless otherwise specified, will be referred to collectively as "Bennett."

seller in the stream of commerce; and, that the handgun was not defective as it is an inherent characteristic of a handgun to discharge when placed in the fire position.

¶6. Williams filed his response in opposition to Bennett's motion for summary judgment. On September 27, 2004, Circuit Court Judge Albert B. Smith, III, granted Bennett's motion for summary judgment and dismissed Williams's claim with prejudice finding Williams failed to offer proof of the condition of the handgun at the time it left Bennett's control and failed to rebut Bennett's contention that Miss. Code Ann. Section 11-1-63(b) applied to this action.[2] Additionally, in explaining his grant of summary judgment, the trial judge, by way of a written opinion, found Williams had failed to prove his case by failing to support his claim with expert testimony any other documentation which would support of contention that the Lorcin handgun had a design defect and that there existed other feasible design alternatives that could have prevented Williams's injury.

¶7. On November 12, 2004, Williams filed a motion to reconsider, noting the circuit court's grant of summary judgment was never certified as final for purposes of appeal and offering new evidence by way of expert testimony in support of the allegation that the Lorcin handgun was defective and unreasonably dangerous. In his response, Bennett reiterated his assertion that Williams had not proven his case; that Bennett was an innocent seller; and that a handgun is an inherently dangerous product. While the trial judge ultimately denied

[2]Miss. Code Ann. Section 11-1-63(b) precludes a claimant from proving a product defective if the harm complained of was caused by an inherent characteristic of the product which can not be eliminated without substantially compromising the product's usefulness which is recognized by the ordinary person with ordinary knowledge.

Williams's motion to reconsider, he recognized the intention of Williams's expert to testify as to the defective condition of the Lorcin handgun. The trial judge reaffirmed his grant of summary judgment, but found that his Miss. Code Ann. Section 11-1-63(b) ruling was an issue best addressed by the appellate courts.

¶8.    By agreement of the parties, the other defendant, Euclid Avenue Sales, Inc., was dismissed with prejudice.    Williams has now filed his notice of appeal with this Court, contesting the trial court's grant of Bennett's motion for summary judgment and subsequent denial of his motion for reconsideration.    These issues are now properly before this Court on appeal.

**DISCUSSION**

¶9.    The standard of review of a trial court's grant of a summary judgment motion is de novo. *Stuckey v. Provident Bank*, 912 So.2d 859, 864 (Miss. 2005) (citing *Miller v. Meeks*, 762 So.2d 302, 304 (Miss. 2000), *Short v. Columbus Rubber & Gasket Co.*, 535 So.2d 61, 63 (Miss. 1988)).    This Court employs a factual review tantamount to that of the trial court when considering evidentiary matters in the record. *Id*. (citing *Aetna Cas. & Sur. Co. v. Berry*, 669 So.2d 56, 70 (Miss. 1996)).    As with the federal rule, Miss. Rule Civ. P. 56(c) requires that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c).    "If any triable facts exist, the lower court's grant of a summary judgment will be reversed; otherwise the decision will be affirmed." *Miller*, 762 So.2d at 304 (citing *Brown v. Credit Ctr., Inc.*, 444

4

So.2d 358, 362 (Miss. 1983)). The party opposing the motion must be diligent and may not rest upon allegations or denials in the pleadings but must set forth specific facts showing there are indeed genuine issues for trial. *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d 331, 335 (Miss. 2004) (citing *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997)).

¶10.    For summary judgment review, the mere existence of triable issues do not entitle one to a trial. This legal tenet has been clearly expressed by the Fifth Circuit Court of Appeals and the United States Supreme Court: "[t]he mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986) (*see also* *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247; 106 S.CT. 2505, 2510; 91 L.Ed.2d 202 (1986). "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company, v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, or that plaintiffs' cause of action is barred by a statute of limitations, all other contested issues of fact are rendered immaterial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552." ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

**I.      WHETHER THE CIRCUIT COURT PROPERLY GRANTED SUMMARY JUDGMENT PURSUANT TO THE REQUIREMENTS EXPLICITLY ENUMERATED IN MISS. CODE ANN. § 11-1-63.**

¶11.    In arguing summary judgment was not appropriate in this case, Williams asserts his claim presents triable issues of fact under our products liability statute.    Williams refutes arguments advanced by Bennett, asserting that privity is not an issue for purposes of a products liability claims; that Bennett is not entitled to avoid suit as an "innocent seller" in the stream of commerce; and that evidence of a handgun discharging upon being dropped presents a triable question of fact for a jury as to whether the weapon was defective.

¶12.    While the parties' arguments are appropriate issues to be considered for the purposes of a products liability claim in the state of Mississippi, we must embark upon a threshold evidentiary review and determine whether the claim advanced by Williams in today's case is properly supported by proof.    In filing a motion for summary judgment, the movant pierces the face of the non-movant's pleadings and puts the non-movant in a position of having to at least present triable issues of fact to the satisfaction of the trial judge.    Therefore, this Court must examine Williams's claim and determine whether he has set forth specific facts showing there are indeed genuine issues to be decided by a trier of fact.    Accordingly, we must determine the nature of Williams's claim and identify the evidence proffered in support thereof.

¶13.    In 1993, the Mississippi legislature promulgated the Products Liability Act and codified what had formerly been common law strict liability.    *See **State Stove Manufacturing Co. v. Hodges***, 189 So. 2d 113 (Miss. 1966).    Since that time, products liability claims have been specifically governed by statute, and a claimant, in presenting his case, must pay close attention

6

to the elements of the cause of action and the liability limitations enumerated in the statute. In general, a claimant must make out a prima facie products liability case in Mississippi by showing that a product was defective; that the defect caused the product to be unreasonably dangerous; that the unreasonably dangerous defect caused the harm complained of; and that the defective condition existed at the time the product left the control of the manufacturer or seller. Specifically, Miss. Code Ann. Section 11-1-63(a)(I)-(iii) reads as follows:

> a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>    (i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
>       2. The product was defective because it failed to contain adequate warnings or instructions, or
>       3. The product was designed in a defective manner, or
>       4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
>    (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
>    (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11-1-63(a)(i)-(iii) (2003).

¶14. Section (a) of the products liability statute serves as a claimant's roadmap and provides the basic framework from which claimants classify their particular claims. In this case, Williams's theory of liability is that Bennett was in the business of marketing and selling handguns; that Bennett sold the handgun that caused Williams's injury; and that, at the time of Williams's injury, the condition of the handgun had not materially changed from when it was

7

manufactured.   Accordingly, in initiating his claim, he asserts his injury resulted from the design, manufacture and sale of a handgun that was in a defective condition which caused it to be unreasonably dangerous for its intended or foreseeable use.   In so asserting, Williams alleges a design defect existed in the Lorcin handgun and relies on Miss. Code Ann. Section 11-1-63(a)(i)(3).   Once claimants define their claims according to section (a) and meet the proof requirements delineated therein, they must meet additional statutory requirements for their claim to proceed.   In this case, Williams's claim is subject to the additional statutory requisites codified in section (f) of the products liability statute, which mandates:

> (f) In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)3 of this section, the manufacturer or product seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
> (i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and
> (ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

Miss. Code Ann. § 11-1-63(f)(2003).

¶15.   Importantly, the above cited section requires a claimant in a design defect case to prove three additional elements.   Similar to its common law predecessor, today's statutory scheme reflects the same tenor as the common law scheme adopted from the Restatement (Second)

8

of Torts by this Court in **State Stove**.[3]  However, in today's statutory adaptation, the legislature included an additional legal element; the statute requires the danger presented by a product's design be foreseeable by the manufacturer/seller.  In his article discussing products liability in Mississippi, Professor Phillip L. McIntosh specifically outlines all of the requirements included in our statutory scheme in clear terms:

> The Act provides that in a design defect claim, a manufacturer is not liable unless the design of the product is both defective and unreasonably dangerous. In most cases, the unreasonable danger presented by a product's design is the factor that makes the design defective. However, a defect in design may not necessarily be unreasonably dangerous. A product may not perform as intended by the manufacturer because of a faulty design, but the faulty design may present no unreasonable risk of harm. The term "unreasonably dangerous," especially in the context of a design defect, is a term of art. The product's design is *unreasonably dangerous only if the plaintiff proves the required elements* of a claim as set forth by the Act. In logical sequence, these elements[...]are the following: (1) *The danger presented by the product's design was known or should have been known to the manufacturer (i.e., the danger was foreseeable)*; (2) the product failed to function as expected (as a result of a design characteristic); (3) *an alternative design existed that would not impair the product's usefulness or desirability; and (4) the alternative design would have to a reasonable probability prevented the harm*.

> In the event that the plaintiff proves each of these elements, he must also prove that the defect existed at the time the product left the manufacturer's control and that it proximately caused the injury.

---

[3]In adopting Section 402A of the Restatement (Second) of Torts, we stated: "[i]f the article left the defendant's control in a dangerously unsafe condition, or was not reasonably safe, or was unsafe for its intended use, the defendant is liable whether or not he was at fault in creating that condition, or in failing to discover and eliminate it." **State Stove**, 189 So.2d at 120-21 (distinguished in **Jones v. Babst**, 323 So.2d 757, 759 (Miss. 1975)). *See also* 17 Miss. C. L. Rev. 277, 279.

9

17 Miss. C. L. Rev. 277, 278-79 (Spring 1997)[4] (emphasis added). The additional requirement of foreseeability, or the knowledge of danger imparted to a seller/manufacturer exercising reasonable care, could be interpreted as codifying implicitly what was codified explicitly in section (h) of § 11-1-63 in 2004. Moreover, the inclusion of this proof requirement serves to protect the "innocent seller" who acts as a mere conduit of a product and has far less knowledge as to defective design than would a manufacturer or distributor.

¶16.    While foreseeability is an element of proof required by our statute, a claimant must also offer a feasible design alternative. According to the Restatement of Torts (Third), a plaintiff establishes a design defect by proving a product could have been made safer by the adoption of a reasonable alternative design. Restatement (Third) of Torts: Prod. Liab. § 2 (1998). If an alternative design could have been practically adopted at the time of sale, and if the omission of such an alternative design rendered the product not reasonably safe, then a design is defective. *Id.* This unique element of proof for design defect claim, is premised on the notion that liability for harm caused by product designs should attach only when the harm is reasonably preventable. Restatement (Third) of Torts: Prod. Liab. § 2(f)(1998). For this reason, demonstrating a feasible alternative design as proof of a design defect is elemental to a claimant's prima facie case. Accordingly, once sufficient evidence has been presented to the judge so the judge can determine that reasonable people could conclude a reasonable

[4]Phillip L. McIntosh, *Tort Reform in Mississippi: An Appraisal of the New Law of Product's Liability*, *Part II*, 17 Miss. C. L. Rev. 277.

alternative design could have been practically adopted, the issue can be entrusted to a trier of fact. *Id.*

¶17. Recently, in ***Clark v. Brass Eagle, Inc.***, 866 So.2d 456 (Miss. 2004), this Court iterated the importance of offering proof of a feasible alternative design. In ***Clark***, a case involving paint ball guns, the claimant advanced a defective design theory under our products liability statute and included expert testimony stating that unless a better design alternative was utilized, the paint ball gun was simply too dangerous to be given to the general public for use outside of controlled situations. *Id*. at 459. After reviewing the evidence, this Court found the trial court did not err in granting summary judgment because the facts did not support any other conclusion. In so ruling, we opined that "Clark [claimant] offered no proof that the paintball gun used in the incident failed to function as expected and offered no feasible design alternative which, to a reasonable probability, would have prevented what happened to him." *Id*. at 461. It follows that the mere mention of a design alternative by an expert comes well-short of lending evidentiary guidance to a court.

¶18. In ***Jordan v. Isle of Capri Casinos, Inc.***, 2005 WL 1421758 (S.D. Miss. 2005), the federal district court for the southern district applied Mississippi law and used reasoning similar to that which we set forth in ***Clark***. The district court granted summary judgment ruling, inter alia, that the claimant failed to prove the defendant escalator company did not design its escalator in a safe condition. *Id*. In so ruling, the district court judge analyzed Mississippi law and stated:

11

The plaintiff has the burden of showing that the "defect that allegedly was the proximate cause of their injury existed at the time that the product left the hands of the manufacturer, and that the defect rendered the product unreasonably dangerous. Accordingly, the proof must support that no material change in that product occurred after leaving the manufacturer's control." *Clark v. Brass Eagle, Inc.*, 866 So.2d 456, 461 (Miss. 2004). Here, Jordan offered no proof that a design defect existed in the escalator, and her expert offered no feasible design alternative to the escalator at issue in this suit.

*Id*. at *6.

¶19.   Similarly, in a recent opinion, the federal district court for the northern district also ruled on today's issue. In *Johnson v. Davidson Ladders, Inc.*, 2005 WL 1871170 (N.D. Miss. 2005), the claimant asserted that a stepladder suffered from a design defect which caused the claimant's accident resulting in injury.   *Id*. at *4.   Finding summary judgment appropriate, the district court judge interpreted the Mississippi statute and stated:

[T]he plaintiffs failed to adduce any evidence to demonstrate the extent of the risk that the alternative design would have avoided or how the alternative design would have affected its utility. Although the plaintiffs offered up numerous claims reports pertaining to other accidents involving the 527-06 ladder, they failed to show that the incidents were similar to Ms. Johnson's accident. More importantly, they offered no evidence relative to the effectiveness of the alternative design in reducing the severity or frequency of accidents.

*Id*. at *5.   In so concluding, the district court judge cited to the Fifth Circuit Court of Appeal's reasoning in *Lavespere v. Niagra Machine & Toolworks, Inc.*, 910 F.2d 167 (5th Cir. 1990):

[Plaintiff's] proof of the risk that might have been avoided by the alternative design and of the burden that switching to the alternative design would have entailed was, to say the least, incomplete. Faced with this meager evidence, no reasonable trier of fact could have concluded that the balance of those two factors tipped in favor of the risk avoided. One cannot balance an indeterminate weight.

12

910 F.2d at 183.

¶20.    In *Wolf v. Stanley Works*, 757 So.2d 316 (Miss. Ct. App. 2000), a case dealing with malfunctioning automatic sliding glass doors, the Mississippi Court of Appeals examined a design defect products liability claim under the Mississippi statutory scheme.  In *Wolf*, Mrs. Wolf offered an older design as evidence of a feasible design alternative.  In finding that Wolf failed to proffer a feasible design alternative, and in upholding the trial court's grant of summary judgment, the Court of Appeals opined:

> [H]er own expert witness testified that the mats had a short life expectancy, were likely to fail and result in accidents, and were very costly. These characteristics impair the "utility, usefulness, practicality or desirability of the product to users or consumers." Miss. Code Ann. § 11- 1-63(f). Absent evidence that the new design proved even more unreliable, it cannot be argued that the older design alternative that was abandoned in part because of the frequency of accidents that it caused would by a "reasonable probability" have prevented the same kind of accident here. *See* McIntosh, *Products Liability, Part II,* at 301-302. The *only* evidence indicates that the mat system was the less efficient system that Stanley had replaced with the type of system used at the Best Western Seaway motel.

*Wolf*, 757 So. 2d at 322 (emphasis in original).

¶21.    We agree with the sound reasoning of the federal courts in *Jordan, Johnson*, and *Lavespere*, as well as that of the court of appeals in *Wolf*.  Fundamental to proving his prima facie case is Williams's burden of proving that the Lorcin handgun was unreasonably dangerous by showing that the product seller, Bennett, knew or should have known about the unreasonably dangerous condition of the handgun; that the handgun failed to function as expected; and, that there existed a feasible design alternative that would have, to a reasonable probability, prevented the harm complained of by the plaintiff.

13

¶22. A review of the record reveals that Williams possessed a Lorcin handgun; that the serial number on the gun was that of a gun once bought and sold by Bennett; and, that Williams was injured when he dropped his Lorcin handgun on the ground when the safety was off, causing it to discharge. In addition to these uncontested facts, an affidavit was submitted by Williams with his motion for reconsideration offering expert testimony in support of the contentions that the firearm industry expects guns to be dropped without the safety on; that the standard of care within the industry is that guns will not unintentionally fire when dropped; and, that the Lorcin handgun is defective and unreasonably dangerous.

¶23. What the record does not show is any proof that Bennett, if considered a seller of handguns for the purposes of this case, had knowledge or should have had knowledge of the danger that caused the injury in this case. We can find no proof of the condition of the gun at any point in the chain of ownership other than its condition at the time of injury, let alone what condition the gun was in at the time Bennett supposedly gained imputed knowledge of it.

¶24. Additionally, we have no proof concerning a feasible design alternative as required by Miss. Code Ann. Section 11-1-63(f)(ii). To this end, Williams failed to provide the circuit court with any basis of comparison from which to determine that the design of the Lorcin handgun was indeed defective. As stated by the district court in *Johnson v. Davidson Ladders, Inc.,* 2005 WL 1871170, \*5: "the [claimant] failed to adduce any evidence to demonstrate the extent of the risk that the alternative design would have avoided or how the alternative design would have affected its utility." Fatal to Williams's case is that Williams's expert tenders no

proof of a feasible design alternative that could have, to a reasonable probability, prevented the harm.

¶25. More than with any other type of products liability case, a trier of fact in a design defect case depends on objective evidentiary mechanisms to determine liability. In Mississippi, the legislature has codified the requirements unique to a design defect claim and laid out an explicit blueprint for claimants to prove when advancing such a claim. When claimants do not fulfill their statutory obligation, they leave the courts no choice but to dismiss their claims because they fail to proffer a key element of proof requisite to the court's determination of whether the claimant has advanced a valid claim under the statute. As the Supreme Court clearly said in *Celotex*, 477 U.S. at 323, where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, ... all other contested issues of fact are rendered immaterial." Clearly, Williams has failed to advance a claim under Miss. Code Ann. Section 11-1-63 by failing to establish the necessary elements of proof specified in section (f).

¶26. For these reasons, we find the trial court appropriately granted summary judgment because Williams failed to present a genuine issue of material fact for trial.

## CONCLUSION

¶27. While there is an interesting factual scenario presented by the facts as alleged in today's case concerning Miss. Code Ann. § 11-1-63(b), the evidence necessary to maintain this suit is legally insufficient. The courts of this state are unified in their interpretation of the legislative mandate set forth in the Mississippi products liability statute. Moreover, in explicit

15

terms, our statute requires that when a claimant asserts a design defect theory of liability, the claimant not only must provide proof that the seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger causing injury, but also, the claimant must provide evidence that the product failed to function as expected by way of producing evidence of a feasible design alternative that could have reasonably prevented the claimant's injury. Having provided no such evidence, the claimant in this case has failed to meet the prerequisites necessary to create a successful cause of action and thus create a triable issue of material fact. Accordingly, we affirm the final judgment as entered by the Circuit Court of Coahoma County in favor of Donald Bennett and against Floyd Williams, Jr.

¶28.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**